UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
NANCY MAYER WHITTINGTON
U.S. DISTRICT COURT
JUL 17 2007

Donald S. Hunter, Sr.
3311 Valley Forest Drive
Upper Marlboro, MD 20772

Plaintiff,

v.                                                        Civil Action No.

Condoleeza Rice, Secretary
United States Department of
State
2201 C Street, N.W.
Washington, D.C. 20520

Defendant.

\* \* \* \* \* \* \* \* \* \* \* \*

Case: 1:07-cv-01268
Assigned To : Friedman, Paul L.
Assign. Date : 7/17/2007
Description: Employ Discrim.

**JURY ACTION**

## COMPLAINT

Pursuant to Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. $$ 2000e, et seq., plaintiff Donald S. Hunter Sr., pro se, respectfully alleged that the defendant discriminated against him on the basis of his race (African-American) and sex (male) and/or retaliation for protected EEO activity **(civil actions 04-0857 PLF and 06-326 PLF)**, disparate treatment and hostile work environment. As pertinent to this case, the plaintiff alleged that the defendant discriminated by:

- On January 2, 2004, Ms. Joyce Love a GS-13 retired from BECA, Grants Division creating a vacant GS-13 position. Ms. Fannie Allen reassigned Ms. Love's work to the remaining Grants Specialists in the office. None of Ms. Love's complex large dollar grants, audits or special projects was reassigned to Plaintiff. Instead the GS-13's and Ms. Julie Johnson a GS-9 (white female) in the office received Ms. Love's GS-13 level work.

-1-

- On January 14, 2004, Plaintiff requested from Ms. Allen the status of his draft final determination letter resolving a complex OIG audit.  The draft determination letter was given to Ms. Allen for clearance on December 15, 2003 after being reviewed by a GS-13. Plaintiff had not received from Ms. Allen the clearance needed to issue my final determination letter.  Ms. Allen claimed that a GS-13 assisted the Plaintiff in resolving the audit.

- Ms. Allen's request that Team Leader's to reviewing Plaintiff completed grants files for errors and mistakes.  Ms. Allen did not request the Team Leaders to review other co-workers completed grant files

- The few errors and mistakes found were used were used my Ms. Allen to denied Plaintiff an Outstanding 2003 performance evaluation.  Plaintiff 2003 performance appraisal prepared by Ms. Allen included negative and untrue statements.  In 2003 Plaintiff was the only Grants Officers who did not receive an outstanding rating from Ms. Allen.

- On February 12, 2004, Plaintiff was informed by e-mail that another candidate (an African American female) was selected for the supervisor Administrative Officer position in BECA Executive Office.  Plaintiff analytical, communication and interpersonal skills and abilities, along with his knowledge of the Federal budget process were far more superior then the candidate selected.   The selecting official had knowledge of the Plaintiff previous EEO complaints and civil actions against BECA.

- Plaintiff submitted an application for a GS-14 Financial Management Specialist position in BECA.  Defendant cancelled the vacancy announcement to deny applicants a promotion and laterally reassigned a white male to promote him to a GS-15.

## Conclusion

For all of the reasons set forth in this complaint, the plaintiff urges the

Court to proceed to determine that the defendant discriminated against the plaintiff on

the basis of the combination of his race (African-American) and sex (male) and/or

retaliation for protected EEO activity, disparate treatment and hostile work environment.

These acts of discrimination include denying the plaintiff an opportunity to be promoted

within BECA to the GS-13/14 and creating a hostile work environment.  If not for the

Defendant denial of a promotion to a GS-13 Plaintiff application would have been competitive to fill the GS-14 vacancy for which he applied.

WHEREFORE, the premises considered, the Plaintiff seeks a judgment against the defendant for a retroactive back-pay to a GS-13, his 2003 performance appraisal report overall rating changed to outstanding and a promotion to a GS-14 position with back pay, court costs and attorney fees along with compensatory damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000).

Plaintiff Demand a Trial by Jury.

July 17, 2007

By _____

Donald S. Hunter, Sr.
3311 Valley Forest Drive
Upper Marlboro, MD 20772
Hm 301 967-0101
Wk 202 203-7119



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P. O. Box 19848
### Washington, D.C. 20036

Donald S. Hunter, Sr.,
Complainant,

v.

Condoleezza Rice,
Secretary,
Department of State,
Agency.

Request No. 0520070129

Appeal No. 01A62921

Agency No. 04004

### DENIAL

Complainant timely requested reconsideration of the decision in *Donald S. Hunter Sr. v. Department of State*, EEOC Appeal No. 01A62921 (September 14, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A62921 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive

2                                          0520070129

this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security.  *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  **The grant or denial of the request is within the sole discretion of the Court.**  Filing a request for an attorney does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
Carlton M. Hadden, Director
Office of Federal Operations

_____APR 1 3 2007___
Date

3                                      0520070129

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Donald S. Hunter Sr.
2345 Barkley Pl
Forestville, MD  20747

Barry L. Wells, Asst. Secretary EEO
Department of State
2201 C St., NW  Rm. 7428
Washington, DC  20520-7310


___APR 1 3 2007___
Date

Equal Opportunity Assistant

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Donald S. Hunter Sr.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS

Condoleeza Rice

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

3311 Valley Forest Dr
Upper Marlboro MD 20772

ATTO

Case: 1:07-cv-01268
Assigned To : Friedman, Paul L
Assign. Date : 7/17/2007
Description: Employ Discrim.

JURY ACTION

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHI
FOR PLAINTIFF AND

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other)  OR  ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Civil Right Act of 1964 and 1991  42 U.S.C. 2000 et seq.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  ☐  ACTION UNDER F.R.C.P. 23  **DEMAND $** 8,300,000  Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☒ YES  ☐ NO  If yes, please complete related case form.  04-0857 (PLF)  06-326 (PLF)

DATE 7-17-07  SIGNATURE OF ATTORNEY OF RECORD  David Hill Sr.

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

OFFICE OF FEDERAL OPERATIONS
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON, DC

DONALD S. HUNTER, SR.,           *
    Complainant              *       OFO Docket No.
                                 *
vs.                              *       October 18, 2006
                                 *
CONDOLEEZZA RICE, Secretary,     *       Appeal No. 01A62921
Department of State              *       EEOC No. 100-2005-00550X
    Agency                        *       Agency No. 040-04
\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## Complainant's Brief in Support of Reconsideration

Pursuant to 29 C.F.R. 1614.405, the Complainant submits his brief in support of

reconsideration of the Commission decision dated September 14, 2006 affirming the

Agency's final order.  The Commission wrote in its decision as a footnote "Although

complainant correctly argues on appeal that a *prima facie case* of discrimination was

established, he fails to present sufficient evidence of pretext or discriminatory/retaliatory

animus."  The Commission decision to investigate and conduct a hearing will have a

substantial impact on the policies, practices and operation of the Agency.


The Agency (Bureau of Educational and Cultural Affairs) systemically denies job

opportunities and promotions to African American males and other minority groups.

Specifically they are not selected for vacant mid level positions nor are they selected for

mid or senior level management positions.  There are no African American males

holding a civil servant mid or senior level management positions compared to whites

and African American females at the Agency.  There are less than 5 African American

males out of approximately 350 employees.  The Agency operates an open door policy

to recruit and hire only whites and African American females.

African American males and other minorities are suffering egregious level of disparate treatment. Whites and African American females are being hired and promoted at a higher concentration rate than any other group. The Agency's 2003 workforce profile **(Attachment 1)** indicates that there are a scant number of African American males, only two at the GS-13 level while the white counterparts and African American females dominant positions at the GS-13 and other high-grade levels.

There is a collective effort by the Agency management to virtually exclude African American males and other minorities from higher grades and management level positions because it is at this level where decisions are made which impact upon employees careers. For example, an examination of the Agency's Executive Director Office's and Program Office's, which most effect employees and their careers will show that there are no civil servant African American males and an scant number of other minorities other than white and African American females in decision making roles. There is a conspiracy to keep African American males out of management positions so that the Agency's white management can continue to bend the rules to discriminate against African American males and other minorities.

The Agency failed or refuses to follow EEO diversity policies and programs as required by EEO MD 715. The memorandum dated July 26, 2004 from Miller Crouch to Barbara S. Pope (ROI Exhibit D20) identified African American males and other minorities as being under represented within the Agency and in positions at the GS-13 or above.

2

Since the July 26, 2004 memo the Agency has announced more than a 100 vacant positions, some were supervisor/manager positions **(Attachment 2).** Only whites and African American females were selected to fill the vacant positions.

In the winter of 2005 the Agency converted 40 term positions to full time GS-11/12/13 permanent positions. The term positions were advertised through competitive procedures **(Attachment 3)**. The Agency failed to follow the July 26, 2004 memo and EEO MD 715 when the Deciding Official's purposely-selected only whites to fill those vacant positions at the GS-13 level. Minorities well qualified at the GS-11/12 level were not selected for any of the vacant positions.

The Agency failed to follow merit promotion policies and used discriminatory practices in the selection of a lesser-qualified candidate for the GS-13 Supervisor Administrative Officer position. Under merit promotion procedures Complainant was ranked higher and rated higher on four out of five required work related experiences then the African American female selected (ROI Exhibit D17d and e). The Agency did not follow it's own policy that assures filling positions with the best qualified individuals available, and assures candidates that positions are filled according to merit factors, and EEO objectives (ROI Exhibits D22 and D23).

Again the Agency failed to follow the July 26, 2004 memo, EEO MD 715 and merit promotion policies and practices when the Deciding Official purposely cancelled a

3

vacancy announcement No. 04-0492 Financial Manager Supervisor position to reassign a white male (Exhibit D18) to promote him. The white male was promoted to a GS-15, within a year. Minorities who applied for vacancy No. 04-0492 that are under represented at the Agency were denied an opportunity to compete for a promotion to the GS-14, while a white male was given a promotion to the GS-15 after been reassigned. Again the Agency failed to follow it's own hiring policy and EEO objectives.

Operation of the Agency is being conducted with discriminatory practices and policies. Mr. John A. Anderegg former president of AFGE Local 1534 provides a declaration **(Attachment 4)** to support that the Agency failed to follow basis EEO policies and practices.

Respectfully Submitted:

Donald S. Hunter, Sr.
2345 Barkley Place
Forestville, MD 20747
301 967-0101(Home)
202 203-7119(Work)

4

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent today to:

Diretor
US EEOC OFO
PO Box 19848
Washington, DC 20036

*First Class Mail*

Department of State
Gregory B. Smith
Deputy Director
Office for Civil Rights
2201 C Street, N.W.
Room 7428
Washington, DC 20520

*First Class Mail*

Michael J. Snider, LLC,
Law Offices of Snider, LLC
104 Church Lane, Suite 201
Baltimore, Maryland 21208
410-653-9060 phone
410-653-9061 fax

**Via email**

October 18, 2006

Donald S. Hunter, Sr.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036


Donald S. Hunter, Sr.,
Complainant,

v.

Condoleezza Rice,
Secretary,
Department of State,
Agency.

Appeal No. 01A62921

Agency No. 04004
Hearing No. 100-A5-0550X

DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts complainant's appeal from the agency's March 21, 2006 final order in the above-entitled matter. Complainant alleged that the agency discriminated against him, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, on the bases of race (African-American), sex (male), and reprisal for prior protected EEO activity when: (1) Management failed to reassign him complex large dollar grants, audits and special projects; (2) Management withheld clearance of his draft final determination letter for errors and mistakes; (3) Management required the GS-13 Team Leaders to review his grant files for errors and mistakes; (4) Management failed to give him an "outstanding" performance rating for the past three years; (5) On February 12, 2004, he was notified that he was non-selected for a GS-13 Supervisor Administrative Officer position in the ECA EX Office; and (6) He was non-selected for a GS-14 Financial Manager Supervisor position (Vacancy Announcement No. 04-0492).

In this case, an EEOC Administrative Judge (AJ) agreed with the agency and found the record devoid of objective evidence that any of management's decisions or actions were based on complainant's race, sex, or protected activity. The AJ further noted that complainant has proffered only his unsubstantiated suspicion that because management took actions in which he did not agree, those actions must have been motivated by discrimination. Witness statements support the position that the agency did not treat complainant any differently than any other employee because of his race or sex or in reprisal for his previous EEO activity.

2

01A62921

Specifically, with respect to Claim 1, management tried to assign a higher number of grants to newer employees who did not have the large volume of open previous agreements that more senior specialists had to administer, and management also tried to assign a particular organization to a grants specialist who had the largest number of agreements with that organization.

With respect to Claim 2, although at the time of his complaint a final determination letter complainant prepared had not yet been signed by his supervisor (S1), she had already credited him with resolving the audit in his 2003 performance evaluation. To the extent S1's final clearance was delayed, she affirms that it was the result of close-out letters being less of a priority than other work requiring her attention, which is not unusual, and was not meant as any sort of "negative indictment" of complainant's work.

With respect to Claim 3, in 2003, S1 did ask complainant's co-workers to review some of complainant's grant case files after it was discovered that he had sent them out without clearance. This review was done as an internal quality control measure to ensure that there was not a problem with the grants which was not previously caught and corrected because they had not been properly submitted for clearance.

With respect to Claim 4, to the extent this claim relates to complainant's 2001 and 2002 performance evaluations, it was untimely when filed.[1] For 2003, complainant received a performance rating of "Excellent." In the agency's rating system, "Outstanding" is "a level of exceptionally high quality performance. The quality and quantity of the employee's work substantially exceeds the fully successful standard and rarely leave room for improvement." The rating of "Excellent" is "a level of unusually good performance. The quantity and quality of work under this element are consistently above average." S1 has cited the following areas in which complainant can show improvement as her basis for rating Complainant as 'Excellent' rather than "Outstanding:" (1) communication skills, particularly written communications, (2) fully analyzing and researching the entire grant packages, and (3) providing accurate technical assistance to grantee and program officers. These observations are supported by the statements of the Team Leaders.

With respect to Claim 5, although he had strengths in other areas, complainant did not have any experience working with support services. In contrast, the selectee for the position was a GS-12 Administrative Officer in the Support Services Division who had been serving as the Acting GS-13 Administrative Officer and, therefore, had significant experience managing and providing support services. In addition, management had received excellent reports from the customers of the support Services Division regarding how the selectee had served in her acting capacity.

---

[1] Complainant initiated EEO contact March 25, 2004.

3                                                      01A62921

With respect to Claim 6, management cancelled this vacancy announcement because a GS-14 Financial Management Specialist was located who was working in another bureau of the Department and was willing to be laterally reassigned to the vacant position in ECA. Even if the announcement for this position had not been cancelled, as a GS-12, complainant does not meet the one-year time in grade at the next lowest level requirement for a GS-14 Financial Manager position and, therefore, was not eligible for the position.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order, because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.[2]

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

---

[2] Although complainant correctly argues on appeal that a *prima facie* case of discrimination was established, he fails to present sufficient evidence of pretext or discriminatory/retaliatory animus.

4                                                      01A62921

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
_____
Carlton M. Hadden, Director
Office of Federal Operations

SEP 1 4 2006
_____
Date

5                                    01A62921

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Donald S. Hunter Sr
2345 Barkley Pl
Forestville, MD 20747

Michael J. Snider
104 Church Ln
#201
Baltimore, MD 21208

Barbara S. Pope, Asst. Secretary EEO
Department of State
2201 C St., NW Rm. 4216
Washington, DC 20520-7310

SEP 1 4 2006
_____
Date

_____
Equal Opportunity Assistant

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

| | |
|---|---|
| Donald S. Hunter, Sr., ) | EEOC No.: 100-2005-00550X |
| ) | |
| Complainant, ) | |
| ) | Agency No.: 040-04 |
| v. ) | |
| ) | |
| Condoleeza Rice, ) | |
| Secretary, ) | |
| Department of State, ) | |
| ) | |
| Agency. ) | |

## MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT

## INTRODUCTION

Complainant, Donald S. Hunter, Sr., was a GS-12 Grants Specialist in the
Department of State since November, 1999. He first initiated contact with the EEO on
March 25, 2004, to complain about discrimination against the Agency. The instant
action was started when Complainant requested the appointment of an Administrative
Judge on March 31, 2005, over one year after his initial complaint. The relevant issues
for review are discrimination based on race, gender and retaliation, disparate treatment
and hostile work environment.

## STATEMENT OF THE CASE

The Complainant alleged hostile work environment, disparate treatment and
discrimination based on race (African American), sex (male) and/or retaliation for
protected EEO activity, in violation of Title VII of the Civil Rights Acts of 1964 and 1991,
42 U.S.C. § 2000e-16, *et seq*. The Plaintiff's complaint involved six allegations of

discrimination: (1) the failure to reassign complex and large dollar grants, audits and projects to the Complainant; (2) the purposeful withholding of the Complainant's final determination letter resolving the OIG audit; (3) the Agency's requirement that GS-13 Team Leaders review the Complainant's grant files; (4) the failure to provide "outstanding" performance ratings for the Complainant's superior work over the past three years; (5) the non-selection of the Complainant for the GS-13 Supervisor Administrative Officer position in the ECA EX Office; and (6) the non-selection of the Complainant for the GS-14 Financial Manager Supervisor position.  Each of these actions is the basis for the disparate treatment, hostile work environment and discrimination claims.  After a proper discovery period, the Complainant will demonstrate a prima facie case of discrimination based on race, sex, and retaliation, as well as disparate treatment and hostile work environment.

## STANDARD OF REVIEW

I.    A MOTION FOR SUMMARY JUDGMENT MUST BE DISMISSED IF THERE ARE GENUINE ISSUES OF MATERIAL FACTS OF CONSEQUENCE IN DISPUTE.

Rule 56(c) of the Rules of the Court of Federal Claims provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The EEOC has its own set of regulations concerning motions for summary judgment, pursuant to 29 C.F.R. 1614.109(g) *et. seq.*

Summary judgment is a drastic remedy which should be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-2514 (1986)

("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment....").

On a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are" for the trier of fact. *Id.*, 477 U.S. at 249-255. Thus, competent and specific evidence by a single declarant may create a triable issue as to a material fact although opposed by many other declarations to the contrary. *United States v. One Parcel of Real Property*, 904 F.2d 487, 491-92 (9th Cir. 1990).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255. "At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072 (1992). Even if the underlying facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).

The United States Supreme Court has stated that summary judgment is appropriate only where the trier of fact determines that, given applicable substantive law, no genuine issue of material fact exists. *Liberty Lobby*, 477 U.S. 242, 255 (1986). An issue is "genuine" if the evidence is such that a reasonable fact-finder could find in favor of the non-moving party. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). In the context of an administrative proceeding under Title VII, summary judgment is

appropriate if, after adequate investigation, one of the parties has failed to establish the essential elements of his/her case. *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3d Cir. 1988). In response to a motion for summary judgment, the trier of fact's function is ***not to weigh the evidence*** and render a determination as to the truth of the matter, but ***only to determine*** whether there exists a genuine factual dispute. *Anderson*, 477 U.S. at 248-49.

The courts have been clear that summary judgment is not to be used as a "trial by affidavit." *Redmand v. Warrener*, 516 F.2 766, 768 (1st Cir. 1975). Initially, it is the burden of the Complainant to establish that there is some substance to his/her allegation of discrimination. In order to sustain this burden, the Complainant must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978). This means that the Complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur.

Discrimination cases generally turn on circumstantial evidence. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987), *cert. denied*, 484 U.S. 979 (1987). A presumption of discrimination arises when a prima facie case is established. This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact ***could conclude that unlawful discrimination did occur.*** In the present case, Complainant can establish a **prima facie** case of harassment, hostile work environment, and reprisal.

The Supreme Court has held that once the plaintiff establishes a prima facie case, the defendant must then produce evidence that it took the action for a legitimate,

8

non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 509 (1993). If the defendant fails to meet its burden, judgment must be entered in favor of the plaintiff as a matter of law. If the defendant is able to meet its burden, the plaintiff may show that the defendant's proffered reasons are pretextual. Once the factfinder finds that the proffered reasons are pretextual, it may find discrimination. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3rd Cir. 1996)(en banc), *cert denied*, – U.S. –, 128 L.Ed.2d 1031 (1997). The Complainant maintains the burden of persuasion to prove unlawful discrimination. *St. Mary's*, 509 U.S. at 509. The factfinder need find only that the discriminatory or retaliatory motive was either the sole or substantially motivating factor to find that the employer is liable. Id.

In order to prevail, Complainant must show that the Agency's reasons for its actions were a pretext to mask discrimination, either because the Agency more likely had a discriminatory motive, or because the stated reasons *lacked credibility*. In *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248 (1981)(emphasis added):

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See Sweeney, supra, at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. [450 U.S. 248, 255] To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the [450 U.S. 248, 256] plaintiff will have a *full and fair opportunity to demonstrate*

9

*pretext.* The sufficiency of the defendant's evidence should be evaluated
by the extent to which it fulfills these functions.

The Complainant retains the burden of persuasion. He now must have the
opportunity to demonstrate that the proffered reason was not the true reason for the
employment decision. This burden now merges with the ultimate burden of persuading
the court that he has been the victim of intentional discrimination. He may succeed in
this directly by persuading the court that a discriminatory reason was the sole purpose
for the Agency's conduct. *See McDonnell Douglas*, 411 U.S., at 804 -805.

This case should be not be dismissed as Complainant has established the *prima
facie* elements necessary for his disparate treatment and harassment claims based on
race and gender, as well as retaliation for engaging in protected activity. Specifically,
Complainant has established that he was treated differently than those outside his
protected class, and that he was actually harassed in a severe and pervasive manner
creating a hostile work environment.

### ARGUMENT

There are six allegations of discrimination that give rise to the instance action: (1)
the failure to reassign complex and large dollar grants, audits and projects to the
Complainant; (2) the purposeful withholding of the Complainant's final determination
letter resolving the OIG audit; (3) the Agency's requirement that GS-13 Team Leaders
review the Complainant's grant files; (4) the failure to provide "outstanding" performance
ratings for the Complainant's superior work over the past three years; (5) the non-
selection of the Complainant for the GS-13 Supervisor Administrative Officer position in
the ECA EX Office; and (6) the non-selection of the Complainant for the GS-14

10

Financial Manager Supervisor position. *See ROI at Tabs C1b and C1c.* There are

genuine material issues of facts of consequence in dispute. There is sufficient evidence

to prove a prima facie case of disparate treatment, hostile work environment and

discrimination based on race, gender, and retaliation.

I.      THE AGENCY'S MOTION SHOULD BE DISMISSED  BECAUSE THERE ARE
        MATERIAL AND GENUINE FACTS IN DISPUTE.

        A.      THE CHARGE OF DISPARATE TRATEMENT SHOULD NOT BE
                DISMISSED BECAUSE THE COMPLAINANT DEMONSTRATED THAT
                HE SUFFERED AN ADVERSE EMPLOYMENT ACTION BASED ON
                GENDER.

        In order to establish a prima facie case of disparate treatment, the Plaintiff must

show that: (1) he is a member of a protected class; (2) he has satisfactory job

performance; (3) he was subjected to adverse employment action; and (4) similarly

situated employees outside his class received more favorable treatment. *Carter v. Ball*,

33 F.3d 450, 458 (4th Cir. 1994).

        In this case, Mr. Hunter was a member of a protected class because he is an

African-American male.  The Complainant received an "excellent" job performance

rating in 2003 which is "a level of unusually good performance." *See Agency's Motion*,

at 3-4.  As the Agency stated, the Complainant's quantity and quality of work are

consistently above average. *Id.* he was not given the larger and more complex grants,

audits, and special projects, despite his experience and qualifications. The Agency

contended that the Complainant cannot prove that he suffered from adverse

employment action. *See Agency Motion*, at 10-11.  The courts have interpreted

employment action as affecting terms, conditions or benefits of employment that are

central to the employment relationship. *Von Gunten v. Md.*, 243 F.3d 858, 865-67 (4th

Cir. 2001). If the court viewed the material facts of this case in the light most favorable to the Complainant then it must conclude that there was an adverse employment action that affected terms, conditions and/or benefits of Complainant's employment.

The Complainant was overlooked for the job promotion to the GS-13 Supervisor Administrative Officer position, received only "excellent" performance evaluations when other female employees in the department received "outstanding" for equal or lesser work and did not receive complex, high budget grants and projects like other employees.

In fact, supervisor Fannie L. Allen testified that she relied on work performance evaluations to promote employees, and that the Agency promoted two female employees non-competitively . See deposition transcript of Allen, dated June 6, 2005, p. 11-14, 57, 79, 94, 96, 130-33. Summary judgment cannot as a matter of law be granted to the Agency on this issue because the Complainant has shown that he suffered an adverse employment action from the Agency's conduct. On this issue, the D.C. Circuit has stated that:

> when an employer makes a hiring decision, "[s]hort of finding that the employer's stated reason was indeed a pretext ... the court must respect the employer's unfettered discretion to choose among qualified candidates." The same standard holds true when an employer decides which of several qualified employees will work on a particular assignment. Perhaps in recognition of the judicial micromanagement of business practices that would result if we ruled otherwise, other circuits have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour change. *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556-57 (D.C.Cir.1997) (alterations in original; internal citation omitted). Other cases, which this circuit has cited with approval, id., have elaborated that an adverse personnel action may occur if the change of work-related duties amounts to "significantly diminished material responsibilities." *Kocsis v. Multi-Care Management*, Inc., 97 F.3d 876, 886 (6th Cir. 1996) (emphasis in original).(6th Cir.1996) (emphasis in original)

12

(citing) Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir.1993)). As the court stated in *Kocsis*, to establish a materially adverse change in terms of employment, the plaintiff must establish that he received "significantly diminished material responsibilities, including termination of employment, demotion evidenced by a decrease in wage or salary, <u>less distinguished title, material loss of benefits, or other indices that might be unique to a particular situation</u>." 97 F.3d at 886. (emphasis supplied).

Further, the Commission's federal sector case precedent has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *Diaz v. Department of the Air Force*, EEOC Request No. 05931049 (April 22, 1994).

The Complainant's failure to receive an "outstanding" job performance rating is particularly relevant when viewed in conjunction with the fact that every grant specialist who received an "outstanding" job performance rating in the section was a female. *See Joyce Love's Affidavit*, at 2-3, Paragraphs19-26. The Agency argues that it does not track the race or sex of its employees, yet there is direct evidence of clear disparate treatment based on gender at the management level of employees regarding these employees' job performance rating evaluations. The Complaint has demonstrated a prima facie case of disparate treatment over this issue by proving that similarly situated employees outside of the protected class were treated differently than the Complainant. The Agency's conduct   constituted an adverse employment action that did have direct, measurable and immediate effects on the Complainant's employment status, despite the Agency's argument to the contrary in its Motion. The Complainant has shown that "a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason". *BALOCH v. NORTON*, Secretary of the Interior, 355 F. Supp. 2d 246, xxx (D.D.C. 2005).

13

B.    THE DISCRIMINATION CLAIM BASED ON RETALIATION SHOULD
       NOT BE DISMISSED BECAUSE THE PLAINTIFF CAN PROVE A PRIMA
       FACIE CASE.

In order to establish a prima facie case of discrimination based on retaliation, the

Plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected

to adverse treatment; and (3) there is a causal link between the protected activity and

the adverse employment action. *See Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d

745, 754 (4th Cir. 1996); *See also* Carter, 33 F.3d at 458.

In this case, the Complainant can prove a prima facie discrimination case based

on retaliation by demonstrating that he is a member of a protected class, did receive

adverse treatment and there was a causal link between his protected EEO activity and

the adverse treatment. The Complainant's statement of undisputed facts was that he

was overlooked in regards to complex job assignments and received a job rating of

"excellent", despite his superior job performance and work product.  Further, he was not

promoted to GS-13/14, despite his qualifications, while similarly situated female

employees were promoted.

The Agency also refused to give the Complainant his 2004 performance rating or

2005 performance plan.  These actions were taken after he initiated contact with the

EEO and filed a complaint of discrimination against the Agency in March, 2004.  The

Complainant's job duties were also significantly diminished after his protected EEO

activity.  A casual connection exists here that was close in time to the Complainant's

engaging in protected activity. Further, the Agency does not assign Mr. Hunter any

complex and high budget grants, audits or special projects, which he was capable of

handling based on his qualifications and experience.

14

If the facts are viewed in the light most favorable to the Plaintiff then there are genuine material issues of facts of consequence in dispute, particularly whether his non-candidacy for job promotions and failure to receive complex grants were due to hostile, derogatory, insulting, and/or intimidating behavior of Complainant's supervisors. Cases citation.

C.    THE PLAINTIFF CAN DEMONSTRATE A PRIMA FACIE CLAIM OF HOSTILE WORK ENVIRONMENT BASED ON GENDER BY PROVIDING EVIDENCE OF DISCRIMINATION AND HARASSMENT THAT WAS SUFFICEINTLY SEVERE AND PERVASIVE.

The Plaintiff will demonstrate that the Agency's actions constituted a hostile work environment and conscious harassment scheme. To establish a prima facie case of hostile work environment, the Plaintiff must show: (1) that he was harassed because of his race, gender and reprisal; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis for imputing liability to the employer exists. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000). As indicated above, in determining whether harassment rises to the level of a hostile work environment, courts consider the frequency of the harassing conduct, its severity, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. The Agency suggests that derogatory, insulting, aggressive, intimidating and hostile behavior directed towards the Complainant is an insufficient basis for Complainant to argue he suffered from a hostile work environment based on gender. *Agency's Motion*, pp. 11-13. The Agency is wrong. Complainant's claims, if believed, would rest on the credibility of all witnesses, and the Complainant is entitled to all inferences of any disputed facts regarding this issue in his favor. Id.

15

The nature of a hostile work environment claim was addressed in *Baloch v. Norton*. In that case, the Plaintiff alleged a hostile work environment and the Agency challenged the charge on the basis that the work environment was not sufficiently hostile and there was no connection between the Agency's actions and discriminatory intent. *See Baloch v. Norton*, 355 F.Supp. 2d. 246, 259 (D.C. Cir. 2005). The Plaintiff alleged hostile work environment based on various facts: a management official "exploded" at him on the phone, yelled at him on multiple occasions, threatened a criminal investigation, issued a letter of reprimand, restricted use of sick leave and removed certain job duties. *Id.* at 259-60.

The court noted that when determining whether harassment rises to the level of a hostile work environment, it must consider the frequency of the harassing conduct, its severity, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Id.* at 260, *citing, Harris*, 510 U.S. at 21. In *Baloch*, the court determined that due to the absence of actionable discriminatory incidents in 2002, the Plaintiff could not possibly prove that the environment was permeated "discriminatory intimidation, ridicule and insult" between 2000 and 2004. *Id. See also Harris*, 510 U.S. at 21-23. However, the court did note that severity can in essence compensate for a lack of pervasiveness, despite the fact that isolated or occasional episodes rarely merit relief. *Id., citing, Harris*, 510 U.S. at 23; *See also Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 440 (2d Cir.1999). The court further stated that the Plaintiff does not establish sufficiently severe conduct that would compensate for his failure to establish pervasive conduct especially considering the fact that there were only isolated incidents of a "nasty"

16

supervisor and a claim of a hostile work environment where almost one-third of the alleged time-span of that hostile environment lacks actionable activity. *Id. See also Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 849 (D.C.Cir.2001) (stating that "[a] mere 'nasty' attitude exhibited by a supervisor is insufficient to establish a hostile atmosphere, especially where, as here, there is no evidence that the 'nasty' attitude is pervasive and constant").

The facts of this case can be distinguished from those in *Baloch*. Unlike the alleged incidents of discrimination in *Baloch*, the discrimination in this matter did not cease for any period of time and was sufficiently severe or pervasive to establish a hostile work environment. The Agency's discriminatory acts were sufficiently continuous and on-going to constitute pervasive discrimination. In this case, the Complainant can demonstrate a prima facie case of hostile work environment based on gender. The Complainant, unlike female employees, was given only simple tasks when his job qualifications and experiences showed his capability in handling complex, higher budget grants. The Agency has not shown that his consistent job rating of "excellent" was judged by an impartial party nor that the "outstanding" rating given to all female grant specialists, and/or decisions to promote them non-competitively was done fairly. Lastly, management withheld clearance of the Complainant's draft final determination letter that resolved an OIG audit. These adverse employment actions were discriminatory in nature and treated the Complainant less favorably than other similarly situated employees outside of his protected class.

III.     THE AGENCY'S REASONS FOR ITS ACTIONS WERE NOT LEGITIMATE AND/OR NON DISCRIMINATORY REASONS.

17

The reasons provided by the Agency for its action were not legitimate or non discriminatory, and the Plaintiff can show such reasons were pretextual. The Agency suggests that failure to assign the Complainant complex large dollar grants, withholding of his draft final determination letter resolving an OIG audit, requiring GS-13 Team Leaders to review his grant files for errors and mistakes, and failing to give him an "outstanding" performance rating for three years do not constitute adverse action and do not have a direct, measurable, and immediate effect upon the Complainant's employment status. *See Agency's Motion*, at 18. It is clear, however, that the Agency's failure to assign the Complainant work on complex and large dollar grants and audits, despite his qualifications and experience, constituted adverse employment action. Furthermore, requiring consistent review of his work without cause and limiting his job performance ratings to "excellent" for three years are direct and measurable examples of pretext for discrimination. The Agency's blunt proposition that all the employees swore under penalty of perjury that they did not treat the Complainant differently does not in itself establish legitimate and non-discriminatory reasons for its actions. *See Agency's Motion*, at 18. The Agency's reasons for its actions in this case are clear examples of pretext for discrimination.

## CONCLUSION

In conclusion, the Agency's Motion for Summary Judgment should be dismissed. A motion for summary judgment can only be granted if there are no genuine material issues of fact in dispute. The testimonial and documentary evidence, when viewed in the light most favorable to the Complainant, demonstrates a prima facie case of discrimination, hostile work environment and disparate treatment based on race, sex

18

and retaliation for engaging in protected EEO activity.  The motion for summary

judgment as a matter of law should be dismissed.

For the foregoing reasons, the Defendant's motion for summary judgment,

pursuant to Rule 56, should be dismissed.

Respectfully Submitted,

/s/
Michael J. Snider, Esq. (MD: Bar No. 24695)
Ari Taragin, Esq. (MD: Bar No. 27409)
Jeffrey Taylor, Esq. (MD: Bar No. 15528)
Snider & Associates, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208
Phone:  410-653-9060
Fax:     410-653-9061
Attorneys for Complainant

19