UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD HUNTER, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1268 |
| | ) |
| HILLARY RODHAM CLINTON, | ) |
| *Secretary, United States Department of State*, | ) |
| | ) |
| Defendant.[1] | ) |

OPINION

This case is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Pro se* plaintiff Donald Hunter brought suit against his employer, the Department of State, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., alleging disparate treatment on the basis of race and sex, retaliation, and a hostile work environment. After careful consideration of the parties' papers, the record in the case, and the relevant case law, the Court will grant defendant's motion.[2]

---

[1]  The Court has substituted Secretary of State Clinton as defendant in place of former Secretary Condoleezza Rice pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2]  The following papers are relevant to this motion: the Amended Complaint ("Am. Compl."); Defendant's Motion for Summary Judgment ("Mot."); Memorandum in Opposition to Motion for Summary Judgment ("Opp."); and Defendant's Reply in Support of her Motion for Summary Judgment ("Rep.").

## I.   BACKGROUND

Plaintiff is a long-time employee of the Department of State who began his career as a GS-4 Supply Clerk.  See Mot., Memorandum of Points and Authorities in Support ("Def. Mem.") at 1.  During the times relevant to this case, plaintiff worked as a GS-12 Grants Specialist.  See Mot., Statement of Material Facts as to Which There is no Genuine Issue ("Def. Facts") ¶ 1.  Plaintiff relies on a series of events that he alleges took place between 2003 and 2005 in support of his employment discrimination and retaliation claims.

First, in 2003 plaintiff was responsible for preparing a final audit determination letter to close out an audit of the Mississippi Consortium for International Development ("MCID Determination Letter").  See Def. Facts ¶ 7; Opp., Plaintiff's Response to Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Pl. Facts") ¶ 7.  It took defendant more than six months to review and clear the letter.  See Def. Facts ¶ 8; Pl. Facts ¶ 8.  Second, on or about January 2, 2004, a GS-13 employee retired, leaving unfinished grant assignments.  See Def. Facts ¶ 4; Pl. Facts ¶ 4.  With the approval of Fannie Lue Allen, the Division Chief of the Grants Division, plaintiff's direct supervisors reassigned these matters to the rest of the grant team.  See Opp, Ex. C, Deposition of Donald Hunter ("Hunter Dep.") at 47.  Plaintiff requested, but did not receive, the "high-dollar" level reassignments; these were considered GS-13 level work.  See id. at 54–55.  Third, in a 2003 performance evaluation, Ms. Allen gave Mr. Hunter an "Excellent" rating.  See Def. Facts ¶ 12.  This rating is one level below the highest rating of "Outstanding," and it indicates "a level of unusually good performance.  The quantity and quality of work under this element are consistently above average."  Mot., Ex. K at 2.[3]  Fourth, Mr.

---

[3]   In 2004 and 2005, plaintiff received the rating of "Fully Successful," which was one level lower still.  See Pl. Facts ¶ 13.  Plaintiff did not mention these ratings in his Amended

Hunter's direct supervisors began to selectively review his work in 2003. See Am. Compl. at 2; Mot. Ex. H, Declaration of Fannie Lue Allen ¶ 15. At the suggestion of Ms. Allen, Mr. Hunter attended various training programs to improve his communication and analytical skills and the quality of his work. See id. ¶ 24. Mr. Hunter also alleges that the defendant tolerated a hostile work environment. See Am. Compl. at 2.

## II.  STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir.

---

Complaint. Defendant points out that plaintiff previously grieved the 2004 rating and the matter was arbitrated, which resulted in a finding in the agency's favor. See Def. Facts ¶ 13.

2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  He is required to provide evidence that would permit a reasonable jury to find in his favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

Because plaintiff is proceeding *pro se,* the Court reviews his filings under "less stringent standards than formal pleadings [or legal briefs] drafted by lawyers," Chandler v. W.E. Welch & Associates, Inc., 533 F. Supp. 2d 94, 98 (D.D.C. 2008) (quoting Haines v. Kerner, 404 U.S. 519, 520, (1972)), and, when necessary, "examine[s] other pleadings to understand the

nature and basis of [plaintiff's] *pro se* claims." Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002).

### III. DISCUSSION

*A. Plaintiff's Claims of Discrimination on the Basis of Race and Sex*

Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee for engaging in protected activity such as filing a charge of discrimination. See 42 U.S.C. § 2000e-3(a); see also Holcomb v. Powell, 433 F.3d at 901.

Absent direct evidence that an employment-related decision was discriminatory or retaliatory, the claims must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009); Moncada v. Peters, 579 F. Supp. 2d 46, 53 (D.D.C. 2008) (citing Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir. 2006)). Traditionally, within that framework, a plaintiff must first establish a *prima facie* case of discrimination or retaliation. See Moncada v. Peters, 579 F. Supp. 2d at 53 (citing Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004)). "Doing so creates a rebuttable presumption of discrimination and 'triggers the

employer's burden to produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason.'" Moncada v. Peters, 579 F. Supp. 2d at 53 (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151).

Recently, the United States Court of Appeals for the District of Columbia Circuit clarified that a "district court need not -- *and should not* -- decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas" at the summary judgment stage if the plaintiff "has suffered an adverse employment action, and [the defendant] has asserted a legitimate, non-discriminatory reason for the decision." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

> Rather . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [any statutorily prohibited factors]?

Id. "While Brady directs the district court's focus to the employer's proffered non-discriminatory reason, the Court still first must determine whether plaintiff has suffered an adverse employment action." Adesalu v. Copps, 606 F. Supp. 2d 97, 103 (D.D.C. 2007) (citing Brady v. Office of the Sergeant at Arms, 520 F.3d at 494).

"An 'adverse employment action' [under Title VII] is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). To show that he suffered from an adverse employment action, "[a]n employee must

[have] 'experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2006)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001). Failure to receive one's preferred work assignments for example, on its own, is not an adverse action. See Blackmon-Malloy v. United States Capitol Police Bd., 338 F. Supp. 2d 97, 106 (D.D.C. 2004).

Plaintiff argues that the following events, the occurrence of which is undisputed, were adverse employment actions: (1) he did not receive high-value grant cases as part of a reassignment following another employee's retirement; (2) one of his audits was not cleared promptly; (3) Ms. Allen, Chief of the Grants Division, requested that plaintiff's direct supervisors review his completed files, something they did not do for other employees; and (4) plaintiff received an "Excellent" rather than an "Outstanding" performance rating in 2003. Defendant argues that viewing these undisputed facts in a light most favorable to the plaintiff shows that none of the events complained of by plaintiff amounts to an adverse employment action.

The Court concludes that the events of which plaintiff complains did not have "materially adverse consequences affecting the terms, conditions or privileges" of the plaintiff's employment. Douglas v. Donovan, 559 F.3d at 552. As to plaintiff's argument that other employees received the reassignment of the complex high-value grants and that he did not, he has provided the Court with no explanation of how this asserted variation in the quality of reassignments had "any effect on [the] salary, benefits, or grade" of his employment or future

7

employment opportunities. <u>Blackmon-Malloy v. United States Capitol Police Bd.</u>, 338 F. Supp. 2d at 106. Without more, "an undesirable assignment" does not constitute an adverse employment action. <u>Id.</u>; <u>see</u> also <u>Stewart v. Evans</u>, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (incorporating opinion of district court) ("changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes") (quoting <u>Mungen v. Katten, Muchin & Zavis</u>, 116 F.3d 1549, 1557 (D.C. Cir. 1997)). Similarly, plaintiff has not explained how the delayed close out of one of his audits had any tangible impact on the terms, conditions or privileges of his employment, and the Court cannot conclude that this was an adverse action -- especially in light of the undisputed fact that plaintiff received "positive credit" for resolving the audit. <u>See</u> Def. Facts ¶ 10. Mr. Hunter has admitted that he suffered "no harm" from this delay. <u>See</u> Hunter Dep. at 168-69.

So too, plaintiff's complaint that his supervisors began closely scrutinizing his files -- without a showing or even an argument that this alleged increased supervision had any additional effect on the terms, conditions or privileges of his employment -- does not constitute an adverse employment action. To the extent that this increased scrutiny could be characterized as potentially adverse, it is akin to a poor performance evaluation, which is undesirable in large part because it might have an impact on the employee's future employment possibilities. The court of appeals, however, has described such possible effects as "often speculative" and explained that "formal criticism or poor performance evaluations are not necessarily adverse actions and they should not be considered such if they did not affect the employee's grade or salary." <u>Douglas v. Donovan</u>, 559 F.3d at 552 (internal quotations omitted). Similarly, even if plaintiff felt embarrassed by the increased scrutiny of his work, damage to one's public

perception, without more, does not constitute an adverse employment action under Title VII. See Stewart v. Evans, 275 F.3d at 1135-36. Finally, and for the same reasons, plaintiff's "Excellent" performance rating was not an adverse action. To the extent that this rating could even be considered less than positive -- it was the second highest rating available -- it still does not amount to an adverse action within the meaning of Title VII. See Russell v. Principi, 257 F.3d at 819 ("in most circumstances performance evaluations alone at the satisfactory level or above should not be considered adverse employment actions"); see also Taylor v. Small, 350 F.3d at 1293 (poor performance evaluation is not adverse action if it did not affect the employee's employment).

None of the actions complained of by plaintiff, viewed in the light most favorable to him, amount to adverse employment actions necessary to sustain a claim for discrimination under Title VII.

*B. Plaintiff's Retaliation Claim*

To establish a *prima facie* case of retaliation, the plaintiff must first show "that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d at 677; see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006); Holcomb v. Powell, 433 F.3d at 901-02. If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a "'legitimate, nondiscriminatory reason' for its actions." Jones v. Bernanke, 557 F.3d at 677 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). This summary judgment framework from McDonnell Douglas, as clarified by Brady, "appl[ies]

equally to retaliation claims" as it does to discrimination claims.  Jones v. Bernanke, 557 F.3d at 678.

As to the first prong, Mr. Hunter identifies his filing of prior employment discrimination claims as his protected EEO activity.  See Am. Compl. at 1.  Although defendant argues that some of this activity post-dates the filing of the current lawsuit, plaintiff's participation in the EEOC administrative process beginning in 2002, see Def. Mem. at 18, and leading to plaintiff's filing of suit in Hunter v. Powell, Civil Action No. 04-0857 (D.D.C.), spans the relevant time period.  Plaintiff meets the first prong of the test.

As to the second prong, whether plaintiff suffered a materially adverse action, the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 67 (2006).

> "Adverse actions" in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim.  Due to differences in the language and purposes behind Title VII's retaliation and discrimination provisions, the Supreme Court clarified in Burlington [Northern & Santa Fe Railway Co. v. White], 548 U.S. 53, that the requirements are distinct: Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment" and may extend to harms that are not workplace-related or employment-related so long as "a reasonable employee would have found the challenged action materially adverse."  Id. at 64, 68.

Baloch v. Kempthorne, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).  An action is adverse if it likely would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. at 60 (internal quotations omitted).

Many of the events of which Mr. Hunter complains are not ones that a reasonable employee would have found to be materially adverse. See Baloch v. Kempthorne, 550 F.3d at 1198. As discussed above, plaintiff has not explained how the delayed close out of one of his audits caused him *any* harm, much less how it would have dissuaded a reasonable employee from making or supporting a discrimination charge. The same is true with respect to plaintiff's complaint that his supervisors began closely scrutinizing his files. As explained above, this is akin to a poor performance evaluation, which is not adverse, even in the retaliation context, when it contains "job-related constructive criticism." Baloch v. Kempthorne, 550 F.3d at 1199 (the following allegations do not amount to retaliation: employee's sick leave restrictions, proposed suspensions, letters of counseling and reprimand, unsatisfactory performance review, and alleged verbal altercations with supervisor); see also Kline v. Springer, 602 F. Supp.2d 234, 241-43 (D.D.C. 2009) (examples of alleged actions which were not materially adverse for the purposes of a retaliation claim).

With respect to Mr. Hunter's argument that other employees received reassignment of the complex large dollar grants, and that he did not, even if this action is one that a reasonable employee might find "material" or "significant," see Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006), defendant has proffered a nondiscriminatory explanation for the reassignment. See Jones v. Bernanke, 557 F.3d at 677. Specifically, the defendant explains that plaintiff received at least one grant in excess of $1.5 million, that he was already assigned a full load of cases, that most of the grants were reassigned to newer employees who had a smaller volume of open assignments, and that grants for particular organizations were assigned to employees who had more experience with those organizations. See Mot. at 10-11. Plaintiff does

not show that this explanation is pretext; he has provided nothing from which a reasonable jury could find that the defendant's asserted reason was not the actual reason.  See Brady v. Office of the Sergeant at Arms, 520 F.3d at 494.  The same is true for Mr. Hunter's argument that defendant gave him a performance rating of "Excellent" rather than "Outstanding."  Even if this could be considered an adverse action in the retaliation context, defendant proffers a legitimate non-discriminatory reason for the performance rating -- that plaintiff needed to show improvement in the communication, research and analysis related to his grant work.  See Mot. at 14-15.  Again, plaintiff has offered nothing to show that this explanation is pretext.  The Court therefore will grant summary judgment in favor of the defendant on Mr. Hunter's retaliation claim.

*C. Hostile Work Environment*

To make out a *prima facie* case of hostile work environment, plaintiff must show that the alleged harassment was based on his membership in a protected class, and that his employer knew or should have known of the harassment and failed to take any remedial action.  See, e.g., Hussain v. Nicholson, 435 F.3d at 366.  He must also show that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Rattigan v. Gonzalez, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (quoting Onacle v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998)).  To determine whether an environment is sufficiently hostile or abusive to support a claim, a court must look at all the circumstances with the perspective that "not all abusive behavior, even when it is motivated by

discriminatory animus, is actionable." Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999). The "conduct must be *extreme* to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (emphasis added). This standard established to show a hostile work environment is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Rattigan v. Gonzales, 503 F.Supp 2d at 78; see also Pearsall v. Holder, 610 F. Supp. 2d 87, 99 (D.D.C. 2009).

Mr. Hunter's hostile work environment claim is not well-developed either in his complaint or in his arguments. Insofar as the Court can discern, Mr. Hunter supports this claim with the same actions he relies on for his discrimination and retaliation claims, along with three additional events: First, his performance ratings decreased from "Excellent" to "Fully Successful" in 2004 and 2005. See Pl. Facts ¶ 13. Second, the defendant did not promote Mr. Hunter to a GS-13 level position. See id. Third, certain comments made about him in staff meeting notes were offensive. The comments in the staff meeting notes were: "Donald volunteered to assist with core grant cleanup. [J]ulie pointed out that a lot of the problems that needed cleanup were Donald's. [J]ulie pointed out that thorough knowledge of the system was necessary to make corrections to ensure the integrity of the data." See Mot., Ex. L. at 4-5; Ex. M, Deposition of Felicia R. Gibson at 31.

With the exception of Mr. Hunter's argument as to the staff meeting notes, none of the events he complains of are the *type* of action that could support a hostile work environment claim. See Brantley v. Kempthorne, Civil Action No 06-1137, 2008 WL 2073913 at *8 (D.D.C. May 13, 2008) ("hostile work environment claim must be based on incidents

13

comprising 'one unlawful employment practice' of intimidation, insult and ridicule that pervades plaintiff's day-to-day working life."). Title VII does not provide a cause of action for the "ordinary tribulations of the workplace," and "not everything that makes an employee unhappy is an actionable adverse action." Id. (citations and quotations omitted).

While negative comments in staff meeting notes in some cases may support a hostile work environment claim, the relatively benign comments made in this case simply do not create a work environment that is "permeated with discriminatory intimidation, ridicule, and insult." Pearsall v. Holder, 610 F. Supp. 2d at 99. They do not create a hostile work environment within the meaning of Title VII. See Stewart v. Evans, 275 F.3d at 1134 ("a few isolated incidents of offensive conduct do not amount to actionable harassment"); Williams v. Verizon Washington, D.C., Inc., 266 F. Supp. 2d 107, 124 (D.D.C. 2003) (holding that isolated incidents of "you know you want me" and offers to go to a hotel room from plaintiff's supervisor did not make a work environment hostile). The undisputed facts show that Mr. Hunter has not established a *prima facie* case of hostile work environment. The Court will grant summary judgment for the defendant on this claim.

### III. CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is granted. An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 15, 009